IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>MAURICE WILLIAMS,<br><br>Defendant. | CASE NO. 4:25-cr-5 |

**ORDER AND REPORT AND RECOMMENDATION**

Defendant Maurice Williams filed a Motion to Suppress.  Doc. 37.  The Government filed a Response.  Doc. 40.  I held a hearing on this Motion on April 15, 2025.  Defendant's counsel and counsel for the Government appeared at the hearing, and the parties provided additional argument.  Defendant also filed a Motion for Jencks Material, a Motion for Witness List, and a Motion to Reveal the Deal.  Docs. 25, 26, 27.  For the following reasons, I **RECOMMEND** the Court **DENY** Defendant's Motion to Suppress.  I **DENY** Defendant's Motions for Jencks Material, for a Witness List, and to Reveal the Deal.

**BACKGROUND**

On January 15, 2025, the Government charged Defendant with: one count of illegal possession of a machine gun under 18 U.S.C. § 922(o); one count of possession with intent to distribute controlled substances under 21 U.S.C. § 841(a)(1); and one count of possession of a firearm in furtherance of a drug trafficking crime under 18 U.S.C. § 924(c).[1]  Doc. 1.  These charges stem from a September 28, 2024 traffic stop, during which Savannah police officers

---

[1] On June 11, 2025, the Government filed the Superseding Indictment, charging Defendant with additional offenses.  Doc. 52.  The charges listed in the original Indictment remain in unaltered form at counts six, seven, and eight of the Superseding Indictment.  Id. at 7–9.

stopped a vehicle for a traffic violation.  Defendant was a passenger in the back seat of the vehicle.  Officers conducted a Terry frisk, which led to discovery of an illegally modified firearm on Defendant's person.  During a search of the vehicle, officers also discovered a backpack containing marijuana and oxycodone.  Defendant files this Motion to Suppress, arguing that the firearm and the drugs should be suppressed as evidence and arguing that statements he made to investigators after the traffic stop should be suppressed.  Defendant contends that the search violated his Fourth Amendment rights.  Doc. 37.

## DISCUSSION

I. **Proposed Findings of Fact**

In making the following proposed findings of fact, I have evaluated the entire record in this case, including all information presented at the hearing on this Motion.  At the hearing, the Government offered three exhibits as evidence, and the Court admitted those exhibits.  The Government's exhibits are: Officer O'Neil's body-worn camera footage ("Gov't Ex. 1"); Officer Skaff's body-worn camera footage ("Gov't Ex. 2"); and a photograph of the evidence recovered from the traffic stop ("Gov't Ex. 3").  The following witnesses testified at the hearing: Nicole Black, who drove the vehicle involved in the traffic stop; Kennedy Van Buren, a Bureau of Alcohol, Tobacco, Firearms, and Explosives agent; Officer Owino; Officer O'Neil; and Officer Skaff.  Many of the following proposed findings of fact are undisputed.  The parties do dispute whether Defendant or the vehicle smelled of marijuana at the time the traffic stop occurred.

On September 28, 2024, between 9:30 and 11:00 p.m., Savannah Police Officer Melvinne Owino was working undercover at 1375 Kenneth Dunham Street, Savannah, Georgia.  Officer Owino observed a group of people, including Defendant, gathered outside.  Officer Owino observed Defendant show someone a clear plastic bag.  The individual smelled the contents of

the bag and examined them with a finger.  Defendant placed the bag back in his pocket.  Officer Owino observed the group smoking what appeared to be marijuana and drinking purple liquid out of soda bottles.  Defendant went to a second-floor apartment and return multiple times.  Defendant left the group, carrying a black backpack, and got into the rear seat of a silver Honda CR-V.  Officer Owino continued to surveil the vehicle.  This information was relayed to Officer O'Neil by radio.

At 11:05 p.m., Savannah Police Officer Devin O'Neil initiated a traffic stop on the silver Honda CR-V for an improper turn.  Gov't Ex. 1.  The stop occurred near the intersection of Montgomery Street and West Derenne Avenue in Savannah, Georgia.  Id.  Officer O'Neil spoke to the driver and asked her to roll down her windows because they were tinted.  Id.  The driver explained that she was an Uber rideshare driver.  Id.  Officer O'Neil noticed Defendant, who had a backpack between his legs, in the rear passenger seat.  Id.  Officer O'Neil returned to his vehicle and announced over his radio that Defendant appeared nervous and had "odor."  Id.  In his hearing testimony, Officer O'Neil clarified that "odor" meant marijuana odor coming from the vehicle.

Officer Garret Skaff assisted in the traffic stop.  Gov't Ex. 2.  Officer Skaff also smelled an odor of marijuana and observed Defendant breathing rapidly and deeply.  Officer Skaff saw a black backpack and a soda bottle filled with purple liquid.  Officer Skaff observed Defendant reach into his front waistband and move an object down his pants.  Officer Skaff instructed Defendant to stop.  Officer Skaff observed Defendant visibly shaking.  Officer Skaff then advised Defendant to breathe and calm down.  Id.

Other officers arrived on the scene to conduct a search of the vehicle.  Gov't Ex. 1.  An officer asked Defendant if he had a weapon.  After several exchanges in which the officer asked

3

Defendant if he had a weapon, Defendant stated "I have a right." An officer then told Defendant "no you don't have a right right now. You have a right to answer my questions. Do you have a gun on you right now?" Gov't Ex. 2. Defendant responded inaudibly. The officer instructed Defendant to place his hands on the back of the driver's seat. The officer then stated "I'm not going to tell you. I will make you. I swear to God." Officers then removed Defendant from the vehicle. Id.

Officer O'Neil conducted a Terry frisk of Defendant and felt a firearm in Defendant's front waistband. Officer O'Neil removed the firearm, which he observed to be a handgun with an extended magazine and a "switch" which converted the weapon to a fully automatic machine gun. Gov't Ex. 1. Officer Skaff spoke to the driver of the vehicle and explained that Defendant was being removed from the vehicle because he "reeks of marijuana and was tucking something in his crotch." Gov't Ex. 2. Officers placed Defendant under arrest and searched Defendant and his backpack. In the backpack, officers found marijuana and oxycodone. Gov't Ex. 1, Gov't Ex. 3. Nicole Black, the driver of the silver CR-V, later testified at the hearing that she did not smell an odor of marijuana in the vehicle.

The Bureau of Alcohol, Tobacco, and Firearms ("ATF") later conducted a custodial interview of Defendant. Agent Van Buren was present at the interview. At the interview, Defendant stated that he stumbled upon the seized evidence. Defendant was also confronted with the seized firearm and drugs.

## II.     Legal Standard

Searches conducted without a warrant "are per se unreasonable under the Fourth Amendment—subject to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967) (footnotes omitted). Under Terry v. Ohio, an officer

may "stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." United States v. Sokolow, 490 U.S. 1, 7 (1989) (quoting Terry v. Ohio, 392 U.S. 1, 27 (1968)).  After the stop, if the officer "reasonably believes" that a suspect threatens officer safety or the safety of others, "he may search the suspect and seize concealed objects that he reasonably believes may be weapons or other instruments of assault." United States v. Johnson, 921 F.3d 991, 997 (11th Cir. 2019) (citing Terry, 392 U.S. at 29).

Courts evaluate reasonable suspicion under "the totality of the circumstances surrounding the stop, including the collective knowledge of all officers involved in the stop." United States v. Bishop, 940 F.3d 1242, 1249 (11th Cir. 2019) (citation omitted).  Reasonable suspicion that an individual is armed and dangerous exists so long as "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others is in danger." Id. at 1248 (quoting United States v. Hunter, 291 F.3d 13012, 1306 (11th Cir. 2002)).  Further, "a series of acts, each of them perhaps innocent in itself, taken together can warrant further investigation." United States v. Reed, 402 F. App'x 413, 415 (11th Cir. 2010).  Reasonable suspicion need not involve the observation of illegal conduct but does require "more than just a hunch." United States v. Lee, 68 F.3d 1267, 1271 (11th Cir. 1995).

Another exception to the warrant requirement is a search incident to lawful arrest.  Upon arrest, officers may "search the person arrested in order to remove any weapons" and may "search for and seize evidence in the immediately surrounding area into which an arrestee might reach in order to grab a weapon or evidentiary items." Holmes v. Kucynda, 321 F.3d 1069, 1082 (11th Cir. 2003) (citing Chimel v. California, 395 U.S. 752, 762–63 (2003)) (punctuation and marks omitted).  However, this exception is limited, and excuses "compliance with the warrant

5

requirement only when the search is substantially contemporaneous with the arrest and is confined to the immediate vicinity of the arrest." Id. (quoting New York v. Belton, 453 U.S. 454, 465 (1981)) (punctuation and marks omitted).

In the context of an automobile, officers may conduct a search of the vehicle itself if the vehicle is readily mobile and police have probable cause for the search. United States v. Ward, 722 F. App'x 953, 961 (11th Cir. 2018) (quoting United States v. Lindsey, 482 F.3d 1285, 1293 (11th Cir. 2007)). Probable cause exists "when under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in the vehicle." Id. (quoting Lindsey, 482 F.3d at 1293).

### III.    Analysis

#### A.    Officers Conducted a Lawful Terry Frisk

Defendant argues that officers did not have a reasonable suspicion that Defendant was both armed and dangerous, as required for a valid Terry frisk. Doc. 37-1. Defendant argues that nervous behavior "does not automatically provide officers with reasonable suspicion." Id. at 5. Further, Defendant argues that, because Georgia is an open carry state, the fact that he possessed a firearm "without more" also did not create reasonable suspicion. Id. Defendant explains that there were multiple officers on the scene and he sat quietly in the vehicle. Defendant also argues that his nervousness was due to officers "shouting at Defendant, forcefully poking him in the head, and telling him he did not have rights." Id. at 6.

In response, the Government argues that the Terry frisk was lawful. Doc. 40. The Government contends that the following facts support officers' reasonable suspicion to conduct a frisk. Officers observed Defendant in an area known for crime, observed Defendant smoking marijuana, detected the odor of marijuana, and observed Defendant to be nervous and sweating.

Officers also observed Defendant "shoving" an object down his waistband. Officers noted that Defendant gave evasive answers when asked whether he possessed a firearm. Id. at 7–8.

Having considered the entire record, I conclude that the officers had reasonable suspicion to believe Defendant was armed and dangerous. Therefore, the Terry frisk was lawful and evidence obtained during the stop and statement made during the subsequent custodial interview should not be suppressed.[2] As stated above, courts evaluate reasonable suspicion under the totality of the circumstances. Relevant here, "[O]fficers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation." Reed, 402 F. App'x at 415 (quoting Illinois v. Wardlow, 528 U.S. 119, 124 (2000)). Thus, "the fact that the stop occurred in a 'high crime area' is among the relevant contextual considerations in a Terry analysis." Id. Time of day is also a relevant consideration. United States v. Johnson, 921 F.3d 991, 998 (11th Cir. 2019) (finding that a crime in progress at 4:00 a.m. supported reasonable suspicion). Officer Owino witnessed Defendant leave a high-crime area immediately prior to the traffic stop. In addition, the traffic stop here occurred after 11:00 p.m.

"An officer's observation of conduct consistent with street-level, hand-to-hand drug transactions" may support a finding of reasonable suspicion, as well. United States v. Tiller, No. 23-10613, 2023 WL 9002866, at *3 (11th Cir. Dec. 28, 2023) (citing United States v. Lopez-Garcia, 565 F.3d 1306, 1313–14 (11th Cir. 2009)). Officer Owino witnessed Defendant hand a plastic bag to another individual, and that individual placed their fingers in the bag in a manner that made Officer Owino believed Defendant had drugs.

---

[2] Regarding the traffic stop itself, Defendant does not contest that the officers lawfully stopped the vehicle he was travelling in. Defendant's challenge only concerns the frisk that occurred after the initial stop.

Odor of marijuana is relevant, too, and contributes to reasonable suspicion. United States v. Knight, 562 F.3d 1314, 1327 (11th Cir. 2009) (finding that an odor of marijuana emanating from a car supports reasonable suspicion to pat down an automobile driver). Officer O'Neil and Officer Skaff stated, contemporaneous with the traffic stop, that they smelled marijuana emanating from the vehicle. The officers' testimony at the hearing confirmed their perception of the odor of marijuana at the traffic stop. Ms. Black testified that did not smell marijuana in her vehicle at the time of the stop, but the officers' contemporaneous statements, hearing testimony, and the fact that marijuana was found in Defendant's backpack all undercut Ms. Black's testimony.

Relatedly, an officer's observation of "exclusively illegal activity" may form the basis for reasonable suspicion. United States v. Gordon, 231 F.3d 750, 754 (11th Cir. 2000). Officer Owino witnessed Defendant smoking what appeared to be marijuana and drinking a purple liquid he believed to be codeine mixed with soda.[3] Officer Skaff and Officer O'Neil both observed a clear soda bottle with purple liquid in it on the Defendant's person during the traffic stop.

In addition, "a bulge in one's outer clothing might indicate the presence of contraband or a weapon." Reed, 402 F. App'x at 416 (citing Pennsylvania v. Mimms, 434 U.S. 106, 112 (1977)). Officers noticed Defendant shift a large, suspicious bulge in his waistband prior to conducting the Terry frisk.

Finally, while "nervous behavior alone cannot support a finding of reasonable suspicion," nervous or evasive behavior remains "a relevant factor in determining whether reasonable suspicion existed." United States v. Hunter, 798 F. App'x 511, 518 (11th Cir. 2020) (citations omitted). Officers observed that Defendant appeared nervous and evasive. While Defendant's

---

[3] Codeine is a controlled substance. O.C.G.A. § 16-13-26.

contention that officers poked him in the head and displayed aggressive behavior may help explain his nervousness, Defendant's behavior when viewed in the totality of the circumstances remains relevant to officers' reasonable suspicion.

Taken together, these factors are sufficient to justify officers' reasonable suspicion that Defendant was armed and dangerous.  Therefore, the frisk that resulted in the seizure of Defendant's firearm was constitutional.

### B. Officers Lawfully Searched Defendant's Backpack

#### *1. Search incident to lawful arrest.*

Defendant next argues that, even if the Terry frisk was unlawful, any subsequent search of his backpack was an unlawful warrantless search.  Defendant argues that the search incident to lawful arrest exception does not apply in his circumstance.  Defendant argues that Georgia law permits open carry of firearms.  Therefore, according to Defendant, "the discovery of a firearm did not provide probable cause to arrest under Georgia law."  Doc. 37-1 at 6.

The Government argues in response that discovery of the firearm did provide probable cause to search Defendant's backpack.  The Government explains that it was clear to officers that the weapon was illegally modified and that Defendant "is prohibited from possessing a machinegun."  Doc. 40 at 10.  The Government argues that because officers discovered an illegal machinegun on Defendant's person, they had probable cause to search his backpack incident to lawful arrest.  Id.

Defendant's argument that officers did not lawfully arrest him is unconvincing.  While possession of a firearm alone is not inherently a crime, possession of a machinegun is. Defendant was charged with unlawful possession of a machinegun under 18 U.S.C. § 922(o). Section 922 references 26 U.S.C. § 5845(b) to define the term "machinegun."  Section 5845(b)

defines a machinegun as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger." A firearm modified with a "Glock switch" constitutes a machinegun. See United States v. Collins, No. 23-11847, 2025 WL 1927514 (11th Cir. July 14, 2025) (affirming a defendant's conviction for possession of an unregistered machinegun, in that case a handgun modified with a Glock switch). Defendant does not dispute that arresting officers immediately knew that the firearm on Defendant's person was as a machinegun. Officer O'Neil also testified that he immediately recognized the Glock switch on the firearm in question and knew that a Glock switch converts a firearm into a fully automatic weapon. Therefore, officers arrested Defendant because he had not just a firearm, but a machinegun.[4] Therefore, probable cause existed to place Defendant under arrest. Once they began Defendant's lawful arrest, officers were entitled to conduct a search of Defendant's backpack incident to that arrest.

### 2. *Probable cause search of a vehicle.*

In addition to being a constitutional search incident to lawful arrest, officers' search of Defendant's backpack was a constitutional probable cause search of a vehicle. The body-worn camera footage and officer testimony at the hearing make clear that officers immediately detected a strong odor of marijuana emanating from the vehicle. As explained above, the automobile exception allows a warrantless search of a vehicle if it is operational and if officers have probable cause to search it. The vehicle here was clearly operational in the context of a traffic stop. As to probable cause, it is well established that "an officer's credible testimony that

---

[4] There are limited circumstances under which possession of a machinegun does not violate 18 U.S.C. § 922(o), including possession "by or under the authority" of the United States or a State, and possession of a machinegun lawfully possessed before May 19, 1986. 18 U.S.C § 922(o)(2)(A)–(B). Defendant does not argue that these circumstances could possibly apply here.

he smelled marijuana can establish probable cause." United States v. Dixon, 901 F.3d 1322, 1339 (11th Cir. 2018).

In the context of a motion to suppress, the district court acts as the factfinder. United States v. Sanders, 712 F. App'x 956, 958 (11th Cir. 2017) (citing United States v. McPhee, 336 F.3d 1269, 1275 (11th Cir. 2003)). And credibility determinations are generally within the province of the factfinder because the factfinder "personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses." United States v. Shubert, 638 F. App'x 882, 833 (11th Cir. 2016) (citation omitted).

Even if Ms. Black did not smell marijuana (as she testified), Officers O'Neil and Skaff both testified credibly that they smelled marijuana during the traffic stop. Officers' statements that they smelled marijuana emanating from the vehicle were internally consistent, were consistent with each other, and were consistent with other evidence in the record. Officers were calm and forthright when testifying and exhibited no discernable self-interested motivation in their testimony. Therefore, it is my conclusion that the officers' testimony regarding marijuana odor is credible. See United States v. Ramirez-Chilel, 289 F.3d 744, 749–50 (11th Cir. 2002) (crediting a magistrate judge's credibility determination when the judge "weighed the testimonies of all the witnesses, taking into account the interests of the witnesses, the consistencies or inconsistencies in their testimonies, and their demeanor on the stand").

Because officers testified credibly that they smelled marijuana emanating from the vehicle, those officers' search of the vehicle and the backpack in the backseat was a valid probable cause search. The seizure of the marijuana and oxycodone found inside the backpack was, therefore, constitutional.

C.  **Defendant's Statements During the Custodial Interview**

Lastly, because the firearm and drugs were lawfully seized, there is no basis for a challenge to Defendant's later statements made to ATF agents. Defendant has not raised any other discernable challenge. Therefore, those statements should not be suppressed.

Because officers conducted a lawful Terry frisk and vehicle search, the seizure of the firearm and drugs found in the backpack was constitutional. Therefore, I **RECOMMEND** the Court **DENY** Defendant's Motion to Suppress.

IV. **Defendant's Remaining Pretrial Motions**

Defendant also filed a Motion for Jencks Material, a Motion for Witness List, and a Motion to Reveal the Deal. Docs. 25, 26, 27. The Government states it opposes these Motions. Doc. 36. The Government states that, in each instance, Defendant seeks information he has already received or that the Government is already obligated by law to provide. Defendant has not contradicted these positions. Therefore, I **DENY** Defendant's Motions, docs. 25, 26, and 27.

## CONCLUSION

For the above-stated reasons, I **RECOMMEND** the Court **DENY** Defendant's Motion to Suppress. I **DENY** Defendant's Motions for Jencks Material, for a Witness List, and to Reveal the Deal.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020). To be clear, a party waives all rights to

challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 18th day of August, 2025.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA